IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE ANGEL TORO and MARIA DE LOS ANGELES TORO<br>Plaintiffs,<br><br>vs.<br><br>AMBASSADOR VETERANS SERVICES OF PUERTO RICO, LLC., d.b.a LA CASA DEL VETERANO; A, B, C, INSURANCE COMPANIES, JOHN DOE, and JAMES ROE<br><br>Defendants. | CIVIL NO. 21-1416<br><br>NEGLIGENCE -BREACH OF CONTRACT<br><br>Article 1802 and 1803; Article 1044<br><br>TRIAL BY JURY DEMANDED |

# <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

**APPEAR NOW** the Plaintiffs in this action, through the undersigned attorneys, and respectfully state, allege and pray as follows:

### JURISDICTIONAL BASIS & VENUE

1. Plaintiffs JOSE ANGEL TORO and MARIA DE LOS ANGELES TORO are citizens of, domiciled in, and reside in the state of New Mexico and the Commonwealth of Puerto Rico, respectively.

2. Ambassador Veterans Services of Puerto Rico, LLC., (hereinafter  also referred to as "AVS") is a for profit limited liability company, incorporated since May 15, 2014, in the state of Indiana.

3. Ambassador Veterans Services of Puerto Rico, LLC's  members reside and/or are domiciled in Indiana or a state other than New Mexico or Puerto Rico.

4. Ambassador Veterans Services of Puerto Rico, LLC's president is Timothy Sadler, who works and/or resides at 4270 North Meridian Street, Indianapolis, IN 46208.

5. Ambassador Veterans Services of Puerto Rico, LLC owns and/or operates La Casa del Veterano, (hereinafter also referred to as "LCV") a home for the elderly, located at 592 KM 5.6, Amuelas 115, Juana Díaz, Puerto Rico.

6. Defendant is a citizen of, domiciled in, incorporated in or with their principle place of business in a state other than New Mexico or Puerto Rico.

7. The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

8. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

## THE PARTIES

9. Plaintiffs JOSE ANGEL TORO and MARIA DE LOS ANGELES TOR O (hereinafter also referred to as Maria Toro or Jose Toro) are the son and daughter, respectively, of MASTER SERGEANT LUCIANO TORO HERNANDEZ hereinafter referred to also as "Mr. Luciano Toro" or "Don Luciano" or "resident".

10. Defendant Ambassador Veterans Services of Puerto Rico, LLC owns and/or operates La Casa del Veterano, a home for the elderly, located in Juana Diaz, Puerto Rico, wherein it provides its elderly residents with a gamut of services.

11. Defendant Ambassador Veterans Services of Puerto Rico, LLC.'s resident agent is Carol I. Velez Ortiz, whose address is Bo. Amuelas Carr. 592 KM 5.6, Juana Diaz, P.R. 00975

12. Co-Defendants **A, B, C INSURANCE COMPANIES** with their principal place of business in a state other than New Mexico or P.R., which issued insurance policies on behalf of AVS and/or LCV or more codefendants for the acts or omissions described herein, encompassing the relevant period of time.

13. Defendants A, B, C Insurance Companies, fictitiously named herein to be later replaced by their actual name which may become known through further discovery in this litigation, which issued insurance policies to one or more of the Defendants.

14. Co-Defendants unknown joint tortfeasors **JOHN DOE** and **JAMES ROE** are caretakers or other health care providers fictitiously named herein, to be later replaced by their actual names which may become known through further discovery in this litigation and who may be liable to Plaintiffs for the damages suffered, in whole or in part, for the actions and/or omissions herein described, encompassing the relevant period of time.

15. Defendants DOE and ROE, fictitiously named herein to be later replaced by the action name which may become known through further discovery in this litigation, which are individuals, business entities and/or corporations who are citizens of a state other than P.R. or New Mexico, who caused and/or contributed through their own acts or omissions or the acts or omissions of the employees, agents, or assignees in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A.§5142, and contractual rights, to the damages caused to Plaintiffs in this case, for which they are jointly and severally liable to Plaintiffs.

## GENERAL ALLEGATIONS

16. Luciano Toro Hernández, (hereinafter Don Luciano) was 92 years old at the time of the incident of the complaint.

17. Master Sargent Luciano fought in the US Army in the Korean and Vietnam wars and was awarded the BRONZE STAR and PURPLE HEART as well as other medals, awards and decorations.

18. Don Luciano was a loving father who raised his family while in the US Army where he actively served for over twenty-one (21) years, reaching the rank of Master Sargent.

19. Don Luciano, before entering La Casa del Veterano, was a healthy elderly man, who although suffered from dementia, did enjoy walking, talking, eating, laughing, dancing and playing games, etc.

20. Prior to La Casa del Veterano, Don Luciano lived at the Tennessee Valley VA Center home for the elderly.

21. During the pandemic, the staff at Tennessee Valley would set up video chats with the residents to see their families, and plaintiffs would speak and see their father Don Luciano almost every other day.

22. The day before he left Tennessee Valley to come to Puerto Rico to relocate to La Casa del Veterano, the staff threw him a big party where Don Luciano danced and danced.

23. Don Luciano began to only speak Spanish and plaintiff Maria Toro decided to bring him to Puerto Rico so he could enjoy his culture, language, music and favorite games, like dominos.

24. Maria Toro retired early to come to Puerto Rico to bring her father and be here with him.

25. Maria Toro, as Don Luciano's legal tutor, met with LCV personnel, and was shown the facilities in Juana Diaz.

26. LCV personnel who presented to Maria Toro and Don Luciano, that they would abide by the elderly bill of rights law and would provide: excellent communication to Don Luciano

with his family; excellent communication with LCV staff, with Don Luciano and Maria Toro (his tutor) and Luciano's family, as well as, provide Don Luciano with excellent medical, nursing, dietary and social care at La Casa del Veterano.

27. LCV agreed to closely consult with Maria Toro, Luciano's tutor, any changes in medication, treatment or care.

28. LCV agreed to give Maria and Luciano's family the fullest of contact and means to see and visit with Luciano while a resident and during the pandemic.

29. On September 24, 2020, his daughter María de los Angeles Toro, admitted Don Luciano to La Casa del Veterano.

30. At intake Don Luciano was described in LCV's records as alert, active, cooperative and oriented in 3 spheres.

31. At that time Don Luciano was in good health, and at intake at LCV the staff documented a history of hypertension (controlled), Alzheimer/dementia, cystostomy and insomnia.

32. At intake Don Luciano was only taking acetaminophen (Tylenol) and a half a pill of atenolol for blood pressure control.

33. For the following three weeks Maria Toro contacted LCV on multiple occasions each week to find out about and to make contact with her father Don Luciano, but LCV staff would not provide information and she was directed to social worker, Melissa Rivera for any information.

34. On October 5, 2020, Maria was finally able to speak to Don Luciano on the telephone, but he was so drugged that she could not understand anything he said.

35. Ms. Melissa Rivera failed to return any calls to Maria Toro until after Don Luciano left LCV.

36. Since Melissa Rivera failed to contact Maria Toro, Maria on October 21, 2020 emailed Jackie Zayas at LCV's admissions, in an attempt to open up communications.

37. Ms. Jackie Zayas responded that she forwarded the message.

38. On October 22, 2020, Maria Toro called again that day and was simply told that her father was asleep.

39. Maria Toro, called Dr. James, who cared for Don Luciano at Tennessee Valley VA Home, and requested she intervene with LCV's physician, since something was not right.

40. Dr. James called and spoke to LCV's physician.

41. The administration of medication to Don Luciano ceased and he was being transported out of LCV.

42. On October 22, 2020, Don Luciano was taken by ambulance to the emergency ward of VA Hospital in San Juan (hereafter referred to as "VAHSJ"),  because LCV allegedly noticed a few bumps on his forehead, which he had since before being admitted to La Casa del Veterano a month before.

43. On that day, LCV's doctor called Maria Toro and said Don Luciano was being transferred to VAHSJ, but that there was no need for her to go to meet him at VAHSJ.

44. Maria Toro called the VA Emergency Department and was told by the attending physician that she needed to immediately come to see her father.

45. María Toro met her father at the VAHSJ's emergency ward, where she was shocked to see what appeared to be a holocaust type prisoner, emaciated, orange colored urine, mouth opened and severely parched, lethargic and severely drugged.

46. The VAHSJ admitted Don Luciano in a fetal position, aphasic (unable to speak), hypoactive state, volume depleted, catheter associated UTI (urinary tract infection),

community acquired pneumonia, bowel obstruction, acute kidney injury caused by severe dehydration or volume depletion.

47. At VAHSJ, Don Luciano was screened and tested for Covid-19, which was negative.

48. At VAHSJ, Don Luciano's hypoactivity was suspected to be induced by medication administered at LCV.

49. At VAHSJ, Don Luciano's acute kidney injury was attributed to severe dehydration.

50. Although Don Luciano responded well to IV fluid hydration, on October 29, 2020, within a week from admission to the VAHSJ, Don Luciano died.

51. While at La Casa del Veterano, Don Luciano suffered from dehydration and malnutrition.

52. While at La Casa del Veterano, Don Luciano in a matter of a few weeks was put on ten (10) additional medications, that he did not receive at the prior home for the elderly in Tennessee.

53. While at la Casa del Veterano, Don Luciano developed urinary tract infection, which went untreated until he was transferred to VAHSJ almost a month later.

54. While at la Casa del Veterano, Don Luciano developed community-based pneumonia, which went untreated until he was transferred to VAHSJ a month later.

55. While at La Casa del Veterano, Don Luciano was completely cut-off from any contact or interaction with his family members.

56. LCV staff failed to consult with Maria Toro, Don Luciano's tutor, for changes in his medication.

57. Maria Toro placed multiple calls to LCV and the designated social worker, Melissa Rivera, to set up communication with Don Luciano and LCV's treatment of him.

58. Melissa Rivera never returned any calls to Maria Toro, until after Luciano's death.

59. Maria Toro requested numerous meeting with LCV's staff, but although some were actually scheduled, the meetings would never take place without any justification for their cancellation.

60. Aside from alerting plaintiffs of Luciano's fall on September 29, 2020, there was no communication from LCV's staff with plaintiffs about Don Luciano's care and deteriorating conditions.

61. LCV's staff failed to consult with Don Luciano's prior treating physician, Dr. James, until October 22, 2020, the day before transferring him to VA Emergency Department.

62. On that date, after consulting with Dr. James, LCV staff finally ceased administering the medication to Don Luciano.

63.  At La Casa del Veterano, on some days, Don Luciano was tied down to his wheelchair, despite Maria Toro's specific request that due to his military training and trauma, that he never be tied down, discussed at the initial interview.

64. At La Casa del Veterano, the staff was unqualified and/or understaffed to properly care for Don Luciano.

65. At La Casa del Veterano, the staff was inadequate to care for Don Luciano and the other residents.

66. At La Casa del Veterano, and Don Luciano's catheter was not adequately inspected daily and kept clean by the personnel hired by AVS, including, but not limited to the regular staff, the  nursing personnel of AVS or, the physician in charge Don Luciano's treatment.

67. AVS' personnel at LCV violated Don Luciano's legal rights as a resident to be treated with dignity, respect and be free from physical and emotional abuse, established in its institutional policy #1 and Law 121 of 1986, known as the Bill of Rights of Persons of

Advanced Age.

68. AVS' personnel at LCV violated Don Luciano's legal and contractual rights as a resident to be informed through his tutor, Maria Toro, of his medical condition, as well of significant changes in his treatment or condition, as required by its institutional policy #2 and Law 121 of 1986, known as the Bill of Rights of Persons of Advanced Age.

69. AVS' personnel at LCV violated Don Luciano's legal and contractual rights as a resident to participate in decisions for treatment through his tutor, Maria Toro, as required by its institutional policy #3 and Law 121 of 1986, known as the Bill of Rights of Persons of Advance Age.

70. AVS' personnel at LCV violated Don Luciano's legal and contractual rights as a resident, to receive family visits physical or virtual, established in its institutional policy #10 and Law 121 of 1986, known as the Bill of Rights of Persons of Advanced Age.

71. AVS' personnel at LCV violated Don Luciano's legal and contractual rights as a resident, to consent to transfer to hospital out of the facility, established in its institutional policy #21 and Law 121 of 1986, known as the Bill of Rights of Persons of Advanced Age.

72. AVS' personnel at LCV violated Don Luciano's legal and contractual rights as a resident, to obtain primary services for medical, social, legal, established in its institutional policy #22 and Law 121 of 1986, known as the Bill of Rights of Persons of Advanced Age.

73. As a direct result of Defendants' negligence and failure to properly provide Mr. Luciano Toro with adequate care, plaintiffs have lost their dear father prematurely.

74. As a direct result of Defendants' negligence and failure to properly provide Mr. Luciano Toro with adequate care, Don Luciano was inhumanly treated, causing Don Luciano much pain and suffering and loss of human dignity and life, which is inherited by plaintiffs.

75. Plaintiffs have suffered much pain and suffering, emotional and mental damages a direct result of Defendants' negligence and/or the negligence of their employees, agents, or assignees.

76. Plaintiffs have suffered much pain and suffering, emotional and mental damages a direct result of Defendants' breach of contract to Don Luciano and Maria Toro in failing to abide by the signed agreement between the parties, instead LCV personnel cut off communication, participation, human contact to cover up the inadequate and inhumane treatment of Don Luciano by the LCV staff and providers.

**FIRST CAUSE OF ACTION - NEGLIGENCE OF AVS AND ITS PERSONNEL AT LCV**

77. The allegations contained above are incorporated by reference as if again fully set forth herein.

78. Defendant, through the acts or omissions of its employees, personnel, nurses, doctors, agents, sub-contractors, or assignees, caused damage to Plaintiffs through fault or negligence in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A.§5142.

79. Defendant AVS provides its residents with  a wide gamut of services and care that elderly residents cannot provide for themselves.

80. Defendant AVS, subcontracts out some of its services provided to its residents.

81. Defendant AVS agreed to abide by Law 121 and guarantee the rights described therein and in its own declaration of rights of its elderly residents.

82. Defendant AVS has established policies, procedures and/or requirements for the provision of the adequate nursing home care for its residents, such as  Don Luciano.

83. Defendant AVS supplies doctors, nurses, therapists, clerical, administrative, and technical personnel to treat patients such as Don Luciano.

84. Defendant AVS failed in its duty to communicate with patient's closest family members, plaintiffs and keep them abreast of their loved one's condition, especially when the patient is unable to make any decisions.

85. Defendant AVS withheld information from plaintiffs, even though they documented their authorization to receive information and decide Don Luciano's care.

86. Defendant AVS would not provide plaintiffs with vital information regarding Don Luciano.

87. Defendant AVS has an inadequate system to ensure residents are adequately fed and hydrated, resulting in inhumane dehydration and malnutrition.

88. Defendant AVS derives revenue from the services it provides its residents.

89. Defendant AVS is liable for negligent care of its residents caused by the personnel it hires to provide services to its residents.

90. Defendant AVS owed a duty to Plaintiffs to provide adequate care to Don Luciano at LCV.

91. Defendant AVS, failed to provide nurses, doctors, facilities, staffing, treatment and medical care consistent with the medical standards that satisfy the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching.

92. The treatment offered by AVS, through its personnel, nurses, employees, doctors, agents and assignees, to Luciano Toro was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching, and as such directly caused and/or contributed to causing Luciano's death and the injuries to plaintiffs, as described herein.

93. At all times herein pertinent, Defendant AVS, through its executives, directors, personnel, nurses, employees, doctors, agents and assignees were negligent in failing to provide the

proper care, including medical attention to Luciano, in failing to provide the proper supervision or management of Dr. Copolanco who cared for Dr. Luciano at LCV, as well as the medical and other personnel it employs, and otherwise failing to exercise due care and caution to prevent the tortious conduct and injuries to Plaintiffs.

94. Defendant AVS, through its personnel, nurses, employees, doctors, agents and assignees, offered medical services to patients, but failed to staff its operation with the medical personnel necessary to timely, appropriately, and safely treat its patients and ensure appropriate and timely treatment.

95. As a direct and proximate cause of Defendant AVS's acts or omissions, through its personnel, nurses, employees, doctors, agents and assignees, including its failure to properly treat Don Luciano , Plaintiffs lost their father and sustained damages, including mental, and emotional pain and suffering and associated damages, as described below.

96. Pursuant to 31 L.P.R.A. §5142, Defendant AVS is liable for the negligent acts or omissions of its personnel, agents, and employees including Dr. Copolanco, as described herein.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

97. The allegations contained above are incorporated by reference as if again fully set forth herein.

98. AVS through LCV entered into a contract with Don Luciano through his legal tutor, Maria Toro, wherein it, among other services, agreed to provide full communication, excellent nutritional, medical, social and residential services to Don Luciano during his stay at LCV.

99. AVS through LCV incorporated the elderly bill of rights into its contract as well as the specific items discussed with Maria Toro prior to her father's admission to LCV.

100.       Pursuant to 31 L.P.R.A. § 2993, Defendants were bound by the terms and

conditions of the agreement to provide the services described therein.

101.     As a direct and proximate cause of Defendant AVS through LCV, breach of contract, both Don Luciano and plaintiffs sustained both economic, physical and emotional damages, as described below.

## THIRD CAUSE OF ACTION - UNKNOWN INSURERS A, B, C, AND JOINT TORT FEASORS

102.     The allegations contained above are incorporated herein by reference as if again fully set forth.

103.     Defendants fictitiously named as ABC, DEF, were, at all times herein pertinent, unknown joint tortfeasors, insurance companies which issued a public liability, negligence, contractual and/or malpractice insurance policy and/or other applicable insurance on behalf of Defendants, and /or other unknown joint tortfeasors.

104.     Pursuant to 26 P.R. Laws Ann. § 2001, Defendants ABC, DEF are jointly and severally liable for the negligence or fault of their insured.

105.     Pursuant to 26 P.R. Laws Ann. § 2003, this action is brought directly against Defendant ABC, DEF.

## DAMAGES

106.     The allegations contained above are incorporated herein by reference as if again fully set forth.

107.     As a direct and proximate result of the acts or omissions and breach of contract of all Co-Defendants, Mr. Luciano Toro suffered for weeks and died.

108.     As a result of the professional negligence, lack of expertise, fault, malpractice and breach of contract of all Co-Defendants, Plaintiffs prematurely lost their father, Luciano Toro, a beloved and caring person.

109.     As a result of the professional negligence, lack of expertise, fault, malpractice and breach of contract of all Co-Defendants, Plaintiffs quality of life has been severely impaired.

110.     As a result of the breach of contract, professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiffs lived through the extraordinary pain and suffering of seeing their beloved father die a painful, untimely and undignified death, knowing that it was avoidable.

111.     As a direct and proximate result of the breach of contract and negligence of all Defendants, Mr. Luciano Toro lived at LCV for weeks suffering dehydration, malnutrition, inhumane restraint, isolated and lack of communication with plaintiffs, during which time he was inhumanely treated, eventually suffering an unwarranted and untimely death. This is  a cause of action which all Plaintiffs inherit as Mr. Luciano 's heirs under Puerto Rico law.

112.     As a direct and proximate result of the negligence of all Defendants, all Plaintiffs will continue to suffer the irreparable loss of their father and the inhumane treatment during the four weeks of his life at LCV.

113.     The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff **JOSE TORO** intense emotional and mental pain and suffering, frustration and a grave sense of injustice valued in an amount of no less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00 )**.

114.     The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff, **MARIA TORO** intense emotional and mental pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**.

115.     Defendant's breach of contract has caused Plaintiffs contract damages equal to a sum no less than **TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00)**.

116.     The negligent acts and omissions of the Defendants directly and proximately caused Mr. Luciano Toro intense physical, emotional, and mental pain and suffering valued in the amount of no less than **TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00)**, which is inherited by Plaintiffs and claimed herein under Puerto Rico law

117.     In total, the damages suffered by Plaintiffs have a reasonable value in excess of **ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00).**

**TRIAL BY JURY DEMANDED**

118.     Plaintiffs demand trial by jury on all causes of action herein raised.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against all Defendants jointly and severally, in an amount not less than **ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00)**, as well as costs incurred, reasonable attorneys' fees, and such other and further relief as this Honorable Court may seem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 31st day of  August, 2021.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor

San Juan, P.R. 00912. Tel: (787) 641-4545;
Fax: (787) 641-4544
jeffrey.williams@indianowilliams.com
vanesa.vicens@indianowilliams.com
jose.vazquez@indianowilliams.com


By: s/ Jeff Williams
JEFFREY M. WILLIAMS
USDC PR Bar No. 202104

*s/Vanesa Vicéns Sánchez*
**VANESA VICÉNS SÁNCHEZ**
USDC PR Bar No. 217807

*s/José M. Vázquez Lozada*
**JOSÉ M. VÁZQUEZ LOZADA**
USDC PR Bar. No. 303805